SORENSEN HEALTH STUDIO No. II, INC., appellant, v. HAROLD E. McCOY et ux., appellees.

No. 52644.

(Reported in 156 N.W.2d 341)

Lindgren & Davis, by John F. Davis, of Des Moines, for appellant.

George E. Flagg, of Des Moines, for appellees.

SNELL, J.—This is an action on a promissory note. Plaintiff, payee and holder of the note, sued defendant makers. From a municipal court judgment for defendants plaintiff has appealed.

Assuming, arguendo, that defendants made a "bad deal" our sympathies as well as the sympathies of the trial court and jury are with defendants. Courts, however, do not have the omnipotent power to rescue from the results of hasty, impulsive or bad judgment in the absence of evidence upon which to base such rescue.

The evidence in this case was without material dispute.

Ben F. Sorensen, president of plaintiff-corporation, called by appointment on defendants, husband and wife, in their home. The purpose was to discuss the purchase by defendants of membership in plaintiff's health studio. In ruling on plaintiff's motion notwithstanding the verdict the trial court commented "The three apparently had a fine, friendly visit." Mr. Sorensen described and illustrated the facilities of his health studio, the privileges and advantages of membership, the cost of membership, and the methods of payment therefor. Again quoting from the trial court's comments: "The defendants, quite naturally, could hardly restrain their immediate desire to use these marvelous facilities, so that they could attain abundant health." Defendants chose the rate they desired and elected to pay $17.50 per month for 24 consecutive months.

Defendant, Harold E. McCoy, signed an application for

membership, an acknowledgment of a binding noncancelable contract and a credit statement.

Defendants Harold E. McCoy and Linda F. McCoy signed a promissory note providing for the payments to be made.

In consideration for the promissory note Mr. Sorensen gave defendants a card certifying membership in the Health Studios.

Plaintiff sold and endorsed the note with recourse to Consumer Finance Company. The finance company gave notice to defendants and requests for payments as the installments came due. Defendants paid nothing, said they could not afford the membership and requested cancellation. Defendants were advised that the membership was noncancelable. Some time after defendants' default the finance company transferred the note back to plaintiff. This action by plaintiff to collect followed.

I. Execution, delivery and nonpayment of the note and receipt of the membership card was admitted. Mr. McCoy also testified:

"My wife signed the note at the same time. I read and signed Exhibit 'B', the acknowledgment, at the same time the note was signed. Mr. Sorensen delivered a copy of the note and the credit statement, Exhibits 'A' and 'P' on that same evening. I read the back of Exhibit 'B', which is entitled 'acknowledgment.' The back of the acknowledgment says that I signed a binding, noncancelable contract.

"On that day I received nothing. I never received any written contract setting out the terms and considerations of any contract. Mr. Sorensen also delivered a membership card similar to Exhibit 1.

"My wife and I have made no payments on the note, Exhibit 'P'.

"I received and signed a membership card similar to Exhibit 1, on July 6, 1965. Mr. Sorensen explained that included in our rights under the membership were massages, and the use of the swimming pool and use of the other facilities of the studio. The membership card received from Mr. Sorensen entitled us to go to the studio and use the facilities.

"I gave Mr. Sorensen the information for the credit statement and he filled in the statement.

"During our conversation with Mr. Sorensen, the figure of $25 per year for annual dues was discussed. We were to pay $420 for the lifetime membership and $25 a year in dues commencing with the third year.

"I bought a lifetime membership, but it was only good for two years and then I had to pay annual dues of $25."

In addition to formal general denial defendants pleaded as an affirmative defense want of consideration. The case was submitted to a jury. The jury found for defendants. Plaintiff's timely motions for directed verdict, judgment notwithstanding the verdict and for new trial were overruled. The motions were detailed and complete and tendered the issues now argued.

On appeal plaintiff alleges error in refusing to grant plaintiff's motion for judgment notwithstanding the verdict and in Division II the alleged error in overruling plaintiff's alternative motion for new trial.

For affirmance defendants argue only that there was want of consideration for the note as a part of a contract.

Our problem is the sufficiency of the evidence to generate or support a jury verdict.

II. In this case we need not discuss the question of burden of proof. Plaintiff's evidence was sufficient legally and factually to support recovery. It was uncontradicted. Unfortunately for defendants they had no evidence of anything helpful. Their position was factually and legally without support.

Defendants argue that this is a contract involving the entire transaction rather than just a note. It makes little if any difference here which it is called. The result is the same.

This case was tried prior to the effective date of our Uniform Commercial Code. It is governed by the law appearing in the Code of 1962. Section 537.2, Code of 1962, provides:

"Consideration implied. All contracts in writing, signed by the party to be bound or by his authorized agent or attorney, shall import a consideration."

Section 537.3 provides:

"Failure of consideration. The want or failure, in whole or in part, of the consideration of a written contract may be shown as a defense, total or partial, except as provided in the negotiable instruments law."

The note signed by defendants was a negotiable instrument. Section 541.24, Code of 1962, provides:

"Presumption of consideration. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value."

Section 541.25 provides:

"Consideration—what constitutes. Value is any consideration sufficient to support a simple contract. An antecedent or preexisting debt constitutes value, and is deemed such, whether the instrument is payable on demand or at a future time."

If the written instrument should be treated as a contract as defendants argue the statute imports a consideration. If it is a negotiable instrument, as it is without question, it is under the statute "deemed prima facie to have been issued for a valuable consideration * * *" and the defendants have become parties thereto for value.

It was argued that defendants never attempted to use their membership in the health studio. Although it makes little difference here it should be kept in mind that the defense was want of consideration rather than failure of consideration.

Defendants bought and received a membership in the health studio. Mr. McCoy's statement that he received nothing was his own conclusion refuted by his own testimony as to what he received and what was included in his membership.

There is no claim that the facilities of the health studio were ever unavailable to defendants or that they were ever denied whatever privileges or benefits were incident thereto.

Neither want nor failure of consideration is established by failure to use what was purchased.

There has been no claim, evidence or issue as to what the real value of a membership in the health studio might be. Defendants bought and agreed to pay for a membership. They received a membership. They have not paid as they agreed.

The real reason was probably expressed in their reply to the demand of the finance company, i.e., they could not afford it. That would have been an excellent reason for not signing the note but it is not a legal defense to an obligation voluntarily assumed.

III. It would be easy to assume that defendants were the victims of high-powered salesmanship in which there was at least some puffing. When they realized that they might have ventured beyond financial discretion it was too late.

There was neither claim nor evidence of any actual fraud, deceit, misrepresentation, misunderstanding, coercion or duress.

To defend against a written obligation there must be something. Here the defendants had no ammunition.

IV. It rarely happens that a plaintiff is entitled to a directed verdict or judgment notwithstanding the verdict but when a case is clearly established and not refuted and the tendered defense is without support such a motion should be sustained.

When the court instructs the jury upon a certain question there must be some evidence upon which to base such instruction. It is reversible error to submit an issue having no support in the record. Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 1182, 136 N.W.2d 338, and Clubb v. Osborn, 256 Iowa 1154, 1160, 130 N.W.2d 648.

There were no issues in the case at bar for submission to a jury.

V. Appellant persuasively argues that there was error in the instructions misleading the jury. There is merit in appellant's argument. The instructions as to demand for payment were not in accord with section 541.70, Code of Iowa. This statute provides:

"Effect of want of demand on principal debtor. Presentment for payment is not necessary in order to charge the person primarily on the instrument * * *."

Even though demand was pleaded and was supported by the evidence, the court placed an improper burden on plaintiff. "The issue thus presented was an immaterial one. The plaintiff had a right to recover without any such allegation in his

petition, or if so made it was not necessary for him to support the same by evidence." Billingham v. Bryan, 10 Iowa 317, 318.

Because of our conclusion that plaintiff was entitled to judgment notwithstanding the verdict further discussion of this problem is unnecessary. Ruling on plaintiff's motion for new trial is not required.

The case is reversed and remanded with instructions to enter judgment for plaintiff notwithstanding the verdict.— Reversed and remanded.

All JUSTICES concur.